Defendant, Gordon Krauss, appeals from a monied judgment rendered against him, he being charged in this cause with the breach of a contract entered into with plaintiff, Tallulah Production Credit Association.
On September 6, 1937, defendant rented and leased unto C.E. Robertson, for the year 1938, a 300-acre tract of land situated in Concordia Parish, Louisiana. The written agreement provided that the tenant would plant not less than 240 acres in cotton and the remaining acreage in other crops, and that as rent the lessor would receive one-fourth of all agricultural commodities produced.
Thereafter Robertson, the tenant, applied to plaintiff, a money lending corporation, for a loan of $1,800 for the purpose of carrying on his farming operations, and his application was approved. In this connection, on January 13, 1938, he signed and gave to that association a promissory note for the mentioned amount payable on demand after September 16, 1938. As security for the note, and for any additional advances, there was executed by the debtor an act stipulating the pledging and pawning of all agricultural crops to be produced on the aforementioned land and the mortgaging of his livestock, implements and tools.
On February 8, 1938, the lessor or defendant herein, Krauss, signed and delivered to plaintiff an instrument styled "Subordination and Non-Disturbance Agreement", reading as follows:
"To the Tallulah Production Credit Association, Tallulah, Louisiana.
"C.E. Robertson (Borrower) has applied to you for a loan in the sum of $1800.00, for the purpose of financing his farm or live stock operations during the current crop season.
"To secure the payment of this loan and other advances, I understand he has tendered to you a Mortgage, Deed of Trust, Crop Lien or Pledge and Pawn (all hereinafter referred to as the "mortgage"), covering certain of his personal property and crops.
"In order to assist him in obtaining this loan, or a loan in such amount as may be approved by you, and also any other advances you may make him under said mortgage, I agree that any legal or equitable right, interest or lien which I have or may obtain in or upon the personal property, including live stock, farm implements, machinery and crops covered by said mortgage, will be subordinate thereto.
"I agree not to interfere with the borrower in his possession of any property subject to your lien, or the land upon which any crops covered thereby are grown, until said crops are harvested or until December 1st of the year in which they mature, whichever is the earlier.
"My claim or evidence thereof, against the borrower is neither assigned nor pledged; and I agree that any assignment or pledge thereof will be made subject to this subordination."
It is a breach of this contract, in the manner hereinafter shown, that plaintiff urges in this cause.
Later, and before the closing of the loan to Robertson, it was learned that under the United States Government's agricultural program only 70 acres of the land *Page 448 
could be planted in cotton. In view of this, the loan, when effected, was for $1,075 rather than for the originally planned amount of $1,800; and the note was endorsed to show the reduction.
On or about August 18, 1938, Robertson was advanced an additional sum of $215, needed and used in connection with his crops, and in evidence of this indebtedness he gave another promissory note payable on demand after September 16, 1938. The note bears the notation: "This is an additional advance as provided for in act of crop pledge and chattel mortgage executed by the maker on the 13th day of January, 1938, and of record in Concordia Parish, Louisiana.
Robertson produced 37 bales of cotton on the leased land during the 1938 season. Nineteen of these bales were delivered to plaintiff, and the proceeds thereof, or $786.81, credited to his account. The debtor also received a credit thereon of $40 for returned stock in the plaintiff association that he had owned. These two credits reduced the total indebtedness from $1,290 to $463.19.
Of the remaining 18 bales, four were sold by Robertson and the proceeds retained and used by him, while 14 were delivered to defendant, his lessor.
In September, 1939, plaintiff received a Government benefit check of $194.11 belonging to Robertson which was applied to the latter's account, further reducing it to $269.08. At this time, the last mentioned 14 bales of cotton were still being held by defendant, or his agent, obviously pursuant to an understanding with plaintiff to so hold them pending the receipt of said benefit check and the ascertaining of its amount. With reference to this understanding, the trial judge appropriately and correctly observes in his well considered written opinion that:
"As to the controversy concerning the actual agreement and understanding, during the time defendant was in possession of said cotton, the evidence is conflicting and contradictory. But a careful review of all the evidence, and particularly the correspondence between these parties, when considered together with the conduct of both parties lead to but one reasonable conclusion, namely, that defendant did agree to hold this cotton pending payment of the government benefit check and to settle with plaintiff for whatever amount remained after adjustment of this check payment.
"In arriving at this conclusion, the court is mindful of the fact that these parties litigant are men of wide business experience. They both had an interest in the cotton. The plaintiff was due a balance by reason of its lien. The defendant was entitled to 9 bales as rent after payment of plaintiff's lien. The amount and the payment of the said benefit check was an item that greatly affected the amount the defendant hoped to collect as rent, and, this adjustment was necessary before plaintiff could know the exact interest it had in the cotton. Plaintiff had the right to attach when defendant took possession. It is difficult to understand why it did not exercise this right, had it not been assured of protection by the defendant. Such an agreement was a reasonable, logical and economical solution of the problem and a very customary transaction among business men. Another convincing circumstance that may be mentioned is the fact that defendant did actually hold this cotton for more than a year and until he was informed of the amount and payment of the benefit check."
Defendant was informed of the receipt of said check, together with the proper crediting thereof, by letter of September 13, 1939, and in this communication it was suggested that the 14 bales of cotton be sold and Robertson's account liquidated. No reply to the letter was forthcoming, but on October 21, 1939, defendant wrote to plaintiff stating:
"I have disposed of the cotton Mr. Robinson turned over to me on his rent and the proceeds were not sufficient to pay me the rent he owed."
The sale had been consummated two days previously and the entire proceeds were retained by defendant.
It is the position of plaintiff in this action, brought to recover the mentioned loan balance of $269.08, that defendant breached his subordination and nondisturbance agreement by the alleged illegal selling of the 14 bales of cotton, which were burdened with its prior lien and pledged for the liquidation and payment of Robertson's account, and the retention of the sale's proceeds.
Under exceptions of no cause and no right of action, overruled by the trial court and reurged here, defendant contends that in view of the facts alleged in its petition plaintiff is restricted to an hypothecary action against the cotton. There is no merit to the contention. A contract assertedly breached by defendant *Page 449 
is the basis of the suit, and a personal action, such as is here instituted, is proper. Code of Practice, Article 26 et seq.
A plea of one-year prescription, predicated on Civil Code, Article 3536 that relates to certain tort, possessory and damage actions, is also untenable. If any of the provisions of such article are relevant to a suit of this nature, and this we seriously doubt but do not decide, a period of one year from the time of defendant's breach of contract, this being the occasion of the cotton's sale and the retention of the proceeds, had not elapsed at the commencement of these proceedings.
It is said by defendant that the total loan of $1,290 granted for the planting and production of cotton on 70 acres of land was excessive. In this connection, it is to be considered that defendant knew of the acreage reduction under the governmental allotment plan, and he received and accepted a benefit check based thereon in payment of his proportionate part. Furthermore, it was recited in the subordination agreement addressed to plaintiff and proposing the lending of $1,800, to which defendant affixed his signature, that "in order to assist him (Robertson) in obtaining this loan, or a loan in such amount as may be approved by you, and also any other advances you may make him under said mortgage * * *," defendant's rights and privileges would be subordinated to those of plaintiff. This quoted provision was full authority for the lending of the initial amount of $1,075 as well as the making of the subsequent advance of $215. Also, there is proof in the record that loans in larger sums on the same or a smaller acreage basis had been made by plaintiff to others. Consequently we think the complaint of excessiveness is not justified.
The equitable doctrine of marshalling of assets is invoked by defendant, he contending that a duty devolved on plaintiff to foreclose its chattel mortgage on Robertson's livestock and farming equipment before seeking to realize from the 14 bales of cotton delivered to him. Plaintiff carried no legal obligation of that kind. It held a first lien on such cotton, in view of defendant's subordination agreement, and "the exception of discussion can not be opposed to the privileged creditor, or to one who has a special hypothecation". Code of Practice, Article 73. See, also, Civil Code, Article 3404. Likewise pertinent to this holding, we think, are Federal Land Bank v. Rester,164 La. 926, 114 So. 839; McKesson Parker Blake Corporation v. Eaves 
Reddit, Inc., La.App., 149 So. 294.
The judgment appealed from appears to be correct, and for the reasons above assigned it is affirmed.